# Carlisle Street.

*Road law—Report of viewers—Findings of fact—Profile plan.*

1. Every presumption is in favor of an award of a road jury, and the findings of the viewers on questions of fact approved by the lower court will not be disturbed by the appellate court, except for clear error appearing from the record.

2. Where a title written at the head of a report of viewers, is not the real title of the proceeding, and the real title indicating the proper length of the view appears in the body of the report and in the notices and other papers attached to the report, the court will disregard the title at the heading, although such title may have been ambiguous, misleading, or incorrect.

3. When a city undertakes in one proceeding to both open and grade a street, and actually completes the physical change there is no question as to the right of an owner to recover any damages he may suffer from the grade, and there is no necessity for making a record of what the grade regulation is; for the regulation has been executed and the record is upon the ground. The Act of May 26, 1891, P. L. 117, requiring a profile plan, showing the grade, to be attached to the report, is not applicable in such a proceeding.

Argued May 12, 1913. Appeal, No. 77, April T., 1913, by Andrew B. Berger et al., from order of C. P. Lawrence Co., Dec. T., 1911, No. 70, confirming report of viewers In re Carlisle Street. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Exceptions to report of viewers. Before W. E. PORTER, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* among others was order confirming report of viewers.

*George B. Berger*, with him *J. Norman Martin*, for appellants.

*James A. Gardner*, city solicitor, for appellee.

OPINION BY PORTER, J., October 13, 1913:

The city of New Castle in pursuance of a valid ordinance caused Carlisle street to be opened and at the same time graded from Laurel avenue to Clenmore boulevard. After the opening and grading of the street had been completed the city presented its petition to the court below praying for the appointment of viewers, under the provisions of the Act of May 16, 1891, P. L. 75, and its supplements and amendments, to assess the costs, damages, expenses and benefits, under the provisions of said statute. Viewers were appointed and after having been sworn and given all the notices required by the statutes and the order of court they heard testimony, prepared a schedule of assessments of which they gave the notice required by law and after having given a hearing to all persons who presented objections to the preliminary assessment, they modified that assessment, assessing a larger amount against the city, and having arrived at a final assessment of the damages and benefits they filed their report. The report of viewers was, on December 15, 1911, confirmed nisi and, no exceptions having been filed the court, on January 16, 1912, entered an order of absolute confirmation. A part of the street was located across the lands of the appellants, to whom no damages were awarded and against whom an assessment of benefits was made. The appellants appeal from the order of final confirmation, and assign that order for error.

The appellants contend that the court erred in confirming the report of viewers for the reason that it is apparent upon the face of the report that the viewers did not consider the damages accruing to appellants by reason of the taking of their land by the opening of Carlisle street. This appeal brings before us only the report of viewers and the order of confirmation. There is no bill of exceptions to the admission or rejection of evidence, and what evidence was presented before the viewers and considered by them we do not know, for

the evidence cannot become a part of the record except it be brought on by bill of exceptions. If under any state of facts which might be established by evidence the plaintiffs were without right to damages for the opening of this street over the strip of land in question, then it may be presumed that these facts were established in a competent manner, to the satisfaction of the viewers, unless the contrary appear upon the face of the report. For anything that appears on this record the viewers may have heard evidence sufficient to warrant a finding that these appellants had dedicated this strip of land to public use as a street, and properly found that they were not entitled to damages when the public accepted the street and assumed control over it: Twenty-Eighth Street Sewer, 158 Pa. 464; Diamond Street, 196 Pa. 254; Murtland Street Sewer, 226 Pa. 478; Chatham Street, 16 Pa. Superior Ct. 103; Fifty-fifth Street, 16 Pa. Superior Ct. 133. Every presumption is in favor of the award, and findings of the viewers on questions of fact, approved by the court, should not be disturbed except for clear error appearing upon the record: Petition of Pittsburg, Smith's App., 179 Pa. 630; Amberson Avenue, 179 Pa. 634. This principal ground of objection by the appellants to the report of viewers cannot be sustained.

The suggestion that the report of viewers shows upon its face that the viewers "did not view the improvement they were ordered to view," is not sustained by the record. This suggestion is founded upon the fact that the entitlement of the report of viewers, the heading which designated the legal proceeding to which it belonged in the court below, contained the words "Opening and grading of Carlisle Street, from Laurel Avenue to City Line" instead of "from Laurel Avenue to Clenmore Boulevard," which was the real title of the proceeding in the court below. It is argued that because there appears on the map returned by the viewers a dotted line marked "Old City Line," that, therefore,

it must be assumed that the viewers viewed only the part of the street between Laurel avenue and this "Old City Line." Even if the title at the head of a paper filed in a legal proceeding could have the effect of negativing every suggestion of the instrument which follows, the contention of the appellant could not be sustained. The words in the title of this paper were not "The Old City Line," they were "To City Line"; from which the inference would arise that they were intended to mean the present city line, and there is nothing in this record which would warrant us in saying that the present city line is not at Clenmore boulevard. What these viewers did is not to be determined by the mere title which was written at the head of the report, but their action is to be ascertained from the whole record. The report, as printed by appellants, consists of several papers, the first of which is the certified order of court appointing the viewers and designating the improvement which they were ordered to view in these words, "the said city duly contracted for and caused Carlisle Street in the Second Ward, between Laurel Avenue, and Clenmore Boulevard, to be graded, and also caused said street to be opened between said points," and commanded the viewers, after having been sworn and given proper notice, to view the said improvement and the properties affected thereby, fully defined their duties and directed them to make report in the manner required by law. The report of viewers proper avers: "That they gave the notices and viewed the above mentioned improvement and the premises affected thereby and assessed the damages, costs and expenses of said street improvement upon the properties benefited in the manner provided by law, and the annexed order of court." The notices to all parties interested, which are attached to the report, properly described the improvement as extending from Laurel avenue to Clenmore boulevard. The map, which the viewers attached to and made a part of their report, shows every lot and

the dimensions thereof, upon each side of the street between Laurel avenue and Clenmore boulevard; and all of said lots were assessed benefits in small amounts. The report and the map show that certain owners of property not located between Laurel avenue and Old City Line were awarded damages for property taken by the improvement. That the viewers understood that they were to view the entire improvement and that they did so clearly appears from the report which they filed.

The contention that the report of viewers was invalid because there was not attached thereto a profile plan, showing the grade of the improvement, cannot be sustained. This contention is founded upon the Act of May 26, 1891, P. L. 117, entitled, "An Act to provide that assessments of damages for the opening or widening of streets or highways in any city in this Commonwealth, shall include all damages for the opening or widening of the street or highway at the existing confirmed grade of such street or highway." The manifest purpose of that statute was to afford a remedy to an owner of property which was damaged when the street was opened but not graded, but for which a grade regulation, or paper grade, had been established different from the natural grade of the surface. Prior to that statute the owner could not recover damages for the grade regulation, when the street was opened, although he was bound to take notice of it in his subsequent building operations, and might be deprived of the beneficial enjoyment of his lands: Greentree Avenue, 21 Pa. Superior Ct. 177, and cases there cited. Whether the language employed in that statute was sufficient to accomplish its purpose is a question not involved in this proceeding. When the city undertakes in one proceeding to both open and grade a street and actually completes the physical change there is no question as to the right of an owner to recover any damages he may suffer from the grade and there is no necessity for making a record of what the grade regulation is, for the

regulation has been executed and the record is upon the ground. The proceeding is then not within the reason for and purpose of the statute in question. The omission in such a case of a profile plan is a mere irregularity and not a jurisdictional defect in the report of viewers.

The order is affirmed and the appeal dismissed.