## Odenheimer v. Commonwealth

*W. F. Steigerwalt*, for plaintiff.

*D. E. Wieand*, for Commonwealth.

HENNINGER, P. J., June 24, 1957.—By proper proceedings, the Commonwealth of Pennsylvania on August 23, 1951, appropriated 6.36 acres of the farm of Henry J. Odenheimer in Whitehall and South Whitehall Townships in Lehigh County for the construction of Legislative Route 771, section 3, known as U. S. Route No. 22 Bypass, and for local service Highway T-601 connecting therewith.

The taking has been a source of considerable pain and trouble to this court, because Odenheimer sought every means but the appropriate and lawful one to compel the Commonwealth to compensate him for his damages.

This court finally induced Odenheimer to abandon methods which would have subjected him to severe criminal penalties and directed the Commonwealth, contrary to its usual policy, to apply for viewers to assess the damages.

After due notice, Odenheimer appeared at the view on the premises but, although notified of the time and place of taking testimony and although his counsel was in the vicinity of the hearing room, neither Odenheimer nor his counsel deigned to wait upon the view-

ers, who thereupon received the Commonwealth's testimony and awarded damages to Odenheimer based thereon.

Odenheimer then moved promptly to take an appeal from the award. The Commonwealth has moved to strike off the appeal on the theory that Odenheimer's unexcused absence from the hearing operated as a waiver and estopped him from taking an appeal from the award.

Odenheimer answered that the reason for his nonappearance was a disagreement with his counsel about the procurement of experts to testify on his behalf. Depositions were taken which fail to sustain this allegation, the fact being that Odenheimer quarreled with three qualified experts and stayed away from the hearing because, as he says, he had no "backers". In our opinion, therefore, the question is squarely raised whether a property owner who has ignored viewers may appeal from their legal award.

The parties agree that the taking was by virtue of the Act of May 29, 1945, P. L. 1108, 36 PS §2391.1 et seq., section 8 whereof, 36 PS §2391.8, provides in part as follows:

"For the purpose of constructing limited access highways, local service highways, or intersection streets or roads, the Secretary of Highways is hereby empowered to take property and pay damages therefor as herein provided. In townships such property shall be taken and damages paid therefor in the same manner as now or hereafter provided by law for the relocation or widening of State highways in townships."

They also agree that the act referred to is currently the Act of June 1, 1945, P. L. 1242, 36 PS §670-101 et seq., whose sections 303 and 304, 36 PS §670-303 and §670-304, respectively, read in part as follows:

Section 303: "The county commissioners, or any other party to such proceedings, may within thirty

(30) days after the filing of the report of the viewers, appeal from the award of the viewers to the court of common pleas, and shall be entitled to a trial by jury. From the judgment of the court of common pleas, an appeal may be had to the Supreme Court as in other cases. Such damages, when ascertained, shall be paid by the county in which the State highway is located."

Section 304: "Whenever the county commissioners do not consent to or approve any such change of width or of existing lines and location, and the secretary determines such change to be necessary, he shall, when possible, enter into an agreement with the owner or owners of said property as to the amount of damages to be paid therefor, and if agreed upon, such damages shall be paid by the Commonwealth out of moneys in the Motor License Fund. If such agreement cannot be made, the owner or owners of said property damaged thereby or the Commonwealth may present their or its petition to the court of quarter sessions for the appointment of viewers to ascertain and assess such damage, as well as any benefits, within the same time in the same manner and with the same right of appeal to the owner or owners and to the Commonwealth as is hereinbefore provided in cases where the county agreed to such change. The damages, when ascertained, shall be paid by the Commonwealth out of moneys in the Motor License Fund."

Since this property is in a township and the county commissioners have not agreed to bear the expense of condemnation, the procedure for award of damages was under section 304 above quoted and the right of appeal is by reference governed by the above quoted provision of section 303.

There is nothing in either section which limits the right of appeal to one who has appeared before the viewers so long as he is an 'other party' (section 303) or an 'owner or owners': Section 304. Our attention

has not been called to any decision under these acts or under section 16 of the Act of May 31, 1911, P. L. 468, or its amendments or supplements, 36 PS §171, from which sections 303 and 304 of the Act of 1945 were taken, which would sustain the Commonwealth's position.

In support of its position that a property owner who has not appeared before viewers has waived his right to appeal, the Commonwealth cites these cases under the Act of May 16, 1891, P. L. 71, described in 53 PS §1231 as obsolete, namely: Travers' Appeal, 152 Pa. 129; Twenty-eighth Street Sewer, 158 Pa. 464; Smith's Appeal, 179 Pa. 630; Du Bois Opera House Co. v. Du Bois Borough, 16 Pa. C. C. 210.

Travers' Appeal, supra, contains this language, page 132:

"The questions which a lot owner desires to raise should be raised before the viewers in the first instance, or at least upon the hearing before them when their report is made up. All exceptions, and requests in writing for rulings, placed before them should be returned with their report to the court. If one does not appear before the viewers to raise the questions of fact on which he wishes to be heard, he may properly be held to have waived them, unless he accounts satisfactorily for his failure to appear before the viewers."

So far as we have been able to ascertain, these cases have not been cited for 60 years for that proposition. When we study the first three cases, we find that the point cited is clearly obiter dictum in the Travers' Appeal, supra, for the court there was dealing with exceptions, which it sustained, and not with appeal. In the Twenty-eighth Sewer case, supra, there was an appeal to the Supreme Court by a party who had not appeared or filed exceptions in the court below, so the question of the right of one who had not appeared before viewers to appeal to the lower court was not

raised. Smith's Appeal, supra, was clearly based upon exceptions and not on appeal. In the Du Bois case, the court was dealing with an appeal, but appellant was not barred for its failure to appear before the viewers, because the court held that the county had joined issue without raising the point and therefore had waived its right to raise the question.

Furthermore, all of the Supreme Court cases cited related to the assessment of benefits and not to the award of damages. While an individual property owner may on appeal question the propriety of the figure arrived at for benefits (Township, etc., v. Roberts, 104 Pa. Superior Ct. 458, 466), there is greater reason for a person who challenges figures which affect many persons to make that challenge with the others affected than to foreclose one who is solely affected by the proceedings before the viewers.

These cases were based upon the theory (Travers' Appeal, supra, page 133) that exceptions are based upon the record before the viewers and that an exceptant must have taken his part before the viewers. The same reasoning would not apply to appeals, for in that case, the hearing before the court is de novo and the viewers' report is not only irrelevant to the issue, but neither the award nor the reasons for the viewers' findings may be offered in evidence: Berger v. Public Parking Authority of Pittsburgh, 380 Pa. 19, 28.

We are in hearty agreement with the Commonwealth that these proceedings have been instituted for Odenheimer's benefit, and that it was most ungracious of him to ignore the viewers. We further agree that property owners affected should appear before viewers in the belief that viewers will arrive at an informed and conscientious award of damages. We do not agree that the penalty for failing to appear is forfeiture of the right to appeal from the award.

Nor do we fear the dire consequences predicted by Commonwealth's counsel. For decades aggrieved defendants have had the right to appeal from the judgments of justices of the peace without presenting their defense to the justice himself, and yet this has not resulted in a breaking down in the system of subordinate tribunals. Appeals from justices are a trifling proportion of the cases finally determined by them. We believe that allowance of appeals from viewers by persons who have not appeared before them will not destroy the admirable system which has finally settled the vast majority of disputed claims for land damages. That the necessity of appearance before viewers is not the settled public policy of this Commonwealth is indicated by the recent County Code of August 9, 1955, P. L. 323, sec. 2432, 16 PS §2432, which provides for immediate access to the courts by agreement of the parties when a county has condemned an easement or right of way.

If Odenheimer by his intransigence has tried our patience, we must nevertheless lean over backward to rescue him from the results of his own stubborn folly.

In view, therefore, of a positive and unconditioned statutory right of appeal and in the absence of any direct and controlling ruling to the contrary, we hold that in this case the property owner may appeal from the viewers' award, despite his failure to appear and offer testimony before the viewers.

We come to this conclusion the less reluctantly because the viewers themselves are not satisfied with their award. They very properly limited themselves to the testimony offered, although their own knowledge of values and their own inspection of the damages to Odenheimer's property would have prompted them to award a higher amount. See Flower v. Baltimore, etc., R. Co., 132 Pa. 524, 528; Roberts v. Philadelphia, 239

Pa. 339, 344; Avins v. Commonwealth, 379 Pa. 202, 205.

Now, June 24, 1957, the motion of the Commonwealth of Pennsylvania to quash and strike off the above captioned appeal is denied and the matter may proceed as provided by law.